**SERAN, A Taxpayer v. BIDDLE et al., Stark County Commissioners.**

Common Pleas Court, Stark County.

No. 88606. Decided October 5, 1948.

Hart & Hart, A. L. Rinnier, Canton, for plaintiff.

D. Deane McLaughlin, Pros. Atty., Paul M. Perkins, Assistant Pros. Atty., Canton, for defendants.

## OPINION

By GRIFFITH, J.

The Stark County Home Farm is a tract of approximately three-hundred acres of land, located to the north of the City of Canton; the most of which is outside the city limits. Nevertheless, the land in question in the case at bar is now within the city limits of Canton.

Title was acquired to this land by separate deeds, the earliest of which dates back to 1836; and the county has been in exclusive possession and control of the same ever since.

The city has grown and developed, and partially surrounded this farm with improvements and city streets.: Along the south side of the farm is a street on which are located very valuable homes, ranging up as high as $40,000.00 each.

The farm is now occupied for the purposes for which it was established, to-wit: A County Home; and it has approximately two-hundred-and-fifty inmates at the present time.

The farm land is used for planting crops, and producing produce for the County Home, as well as other Public Institutions in the county, such as the County Jail and the Molly Stark County Tuberculosis Sanitarium.

In July 1948 the county commissioners advertised for, and received bids for the two tracts of land described in the plaintiff's petition, constituting portions of the County Farm. One tract, located on the northeast corner of the farm, consists of thirty-five acres, and the other tract, situated on the north side of Twenty Fifth Street, which is on the south side of the farm, comprises two acres.

Demand was made upon the prosecuting attorney, to bring an action to enjoin the sale of these two tracts, and he refused, or failed to yield to the demand, and hence this petitioner, as a tax payer, filed suit, and obtained a restraining order from the Common Pleas Court of Stark County.

The matter is now before the court upon motion to dissolve the temporary restraining order heretofore issued.

The legal questions involved are:

1st: Does the proposed sale of the two tracts in question constitute a gross abuse of discretion on the part of the county commissioners;

2nd: Do the county commissioners have a legal right, and power to sell this portion of the County Farm, under the situation existing and presented by the facts of this case?

Under the evidence presented, it is the firm conviction of this court that the county commissioners' conduct, in their effort to sell these two parcels of land, does not amount to any

gross abuse of discretion on their part; and the prices bid are not inadequate.

These sales were open to the world. Public auction offerings; and this plaintiff, and all others similarly situated, not only had an opportunity, but were invited by the advertisements to this sale to come in and bid and buy; and it would be wholly improper for this court to impose its judgment upon the judgment of the county commissioners, which, in this case, was free from any abuse of discretion on their part. They have exercised their discretion, and determined that a sale was advisable; and they feel that the interest of the county will best be served by selling these two parcels of land at the prices bid, and this court should not step in and interfere in the exercise of their sound judgment with respect to this important matter.

The important and less easily disposed of problem presenting itself in their lawsuit is: Whether or not the county commissioners may sell the County Home Farm, or any part of it, as long as the County Home is open?

The general power of the commissioners to sell lands held for county purposes is derived from §2447 GC.

Under that section if, in their opinion, the interests of the county so require, the commissioners may sell any real estate belonging to the county, and not needed for public use.

A similar provision has been found in the Ohio statutes for almost a century, and the only restriction on the exercise of this power of sale by the Board appears to be that the land in question is no longer needed for 'public use'; in which event the commissioners may exercise their discretion, and determine and sale is advisable if they feel the interest of the county will best be served thereby.

However, in 1929, and while this statute provision was in full force and effect, the Legislature passed Section 2557-2, which specifically covered the subject of the sale of a County Home Farm.

This Section, in part, reads as follows:

"After a County Home has been closed, the County Commissioners may sell all or part of the County Home Farm".

Secs. 2447 and 2557-2 GC both cover the subject matter of the sale of county-held lands, and are "in pari materia".

Is there a conflict between these two Sections?

If these two sections are inconsistent, then the older enactment must give way. **Richards v. Bank Co., 81 Oh St 359.**

By the force of statutory interpretation, the later enacted section, being the last expression of the legislature, should be determined to be the intent of the legislature.

In construing a Statute, Lord Herschell, in Bank of England v. Vagliano, L. R. 1891 App. cases 107, said:

"I think the proper course is in the first instance to examine the language of the Statute, and to ask what is its natural meaning, uninfluenced by any considerations derived from the previous state of the law, and not to start with inquiring how the law previously stood and then assuming that it was probably intended to leave it unaltered, to see if the words of the enactment will bear an interpretation in conformity with this view."

Sutherland in his work on Statutory Construction, Vol. 2, page 541, Section 5204, says:

"General and special acts may be 'in pari materia'. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is a conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling."

Does §2557-2 GC constitute a distinct and definite limitation on the general broad powers of sale vested in the county commissioners, when they are considering the sale of a County Home Farm?

The plaintiff contends that the commissioners have no power to sell until the County Home is closed, under the provisions of §2557-2 GC; and that the area of discretionary action on their part is never reached until the home is first closed.

Do the words "after a County Home has been closed" constitute a condition precedent to the power and ability of the commissioners to sell all or any part of the County Home Farm?

The kernel of this case revolves upon the question of whether or not the Legislature intended that §2557-2 GC should operate as an absolute prohibition on the sale of the County Home Farm, until the closing of the County Home Building. This section is a part of Senate Bill 215, which was an Act passed in 1929, relative to various county and correctional institutions. Its primary object was relative to County Homes, and District County Homes.

The first section of the Act, providing that a County Home may be closed by the county commissioners; and the second section provided that the inmates could be provided for in some other manner.

The third section is the one now under the miscroscope in this case.

At the time of the passage of this Act of course the county commissioners had a right to sell, under certain circumstances, the county property; but this Act cleared up the question of whether or not the commissioners could close a County Home and care for the inmates in some other manner, and it is very questionable whether the Legislature intended that this provision, §2557-2 GC, was enacted for the purpose of limiting §2447 GC. The purpose of this enactment was to clearly and unequivocally authorize the closing of the Home by the county commissioners; rather than to outline the manner, or prescribe the way in which the property, or any part thereof, could be sold.

There are no negative words in this statute, denying the commissioners the right to sell the property.

"Statutes which relate to the manner or time in which power or jurisdiction is to be exercised and not to the limit of the power or jurisdiction itself may be construed to be directory unless accompanied by negative words importing that the acts required shall not be done in any manner or time than that designated." **Schick v. Cincinnati, 116 Oh St, Page 16.**

"* ⸯ * and therefore the rule has been laid down that when no rights will be impaired, statutory provisions containing no negative words or implications concerning the time and manner in which public officials shall perform designated acts are directory. Also statutes which relate to the manner and time in which power and jurisdiction vested in a public officer is to be exercised and not the limitation of the power or jurisdiction itself, may be construed to be directory unless accompanied by negative words importing that the act required shall not be performed in any other maner or time than that designated." **32 O. Jur., Page 938** under Public Officers.

"Generally those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey, no prejudice will occur to those whose rights are protected by the statutes, are not commonly considered mandatory." Sutherland on Statutory Construction, Vol. 2, Page 215.

It is the conclusion of this court that §2557-2 **GC** does not contain a condition precedent to the selling of the County Home Farm, but that the words "after a County Home ▮ has been closed" are merely direction; since no injury under the evidence in this case can result from ignoring those words, and the action of the county commissioners in the proceedings in this case were legal.

The temporary injunction issued by this court on July 14, 1948 is hereby dissolved, and the petition of the plaintiff dismissed.