## SERAN v. BIDDLE et al.

Ohio Appeals, Fifth District, Stark County.

Decided February 11, 1949.

Ian Bruce Hart, William L. Hart, Jr., Canton, for appellant.
D. Deane McLaughlin, Pros. Atty., Paul M. Perkins, Canton, for appellees.

For Common Pleas see **54 Abs 539.**

## OPINION

By PUTNAM, J.

This action originated in the Common Pleas Court of Stark County and is one in equity to enjoin the county commissioners from selling a portion of the county-home farm which they deemed no longer needed for public purposes. Upon final hearing below the decree was for the defendants and the injunction was refused. 87 N. E. 2d 492.

The appeal to this court is on questions of law and fact and was heard upon the transcript of the evidence given in the first trial.

One factual and two legal propositions are presented. The factual proposition is: Under the situation as shown by the evidence, was the action of the county commissioners in the attempted sale such an abuse of discretion as to warrant a court of equity in substituting its judgment for theirs?

The first legal proposition is: Did the county have legal title to this land in view of the fact that, in the deed to the defendants "Stark County Ohio" was the grantee named, instead of the county commissioners and their successors in office?

The second legal proposition presents a problem of statutory construction. This is the phase strenuously argued by plaintiff, and the one to which we will direct our attention first.

**Sec. 2447 GC,** provides in part as follows:

"If, in their opinion, the interests of the county so require, the commissioners may sell any real estate belonging to the county, and not needed for public use * * *."

This section in its essential features has been in the statute books for nearly 100 years. It was amended in **116 Ohio Laws, pt. 2, 149, in 1936.** It was last amended with additions in **122 Ohio Laws, 373** and effective September 17, 1947.

In 1929, **113 Ohio Laws 528**, the Legislature passed §§2557, 2557-1, 2557-2 and 2557-3 GC. These sections provide for, §2557 **GC**, the closing of the county home under certain circumstances; §2557-1 **GC**, the disposition of the inmates and future eligibility of others for county care; §2557-2 **GC**, the sale or lease of county-home-farm property; and, §2557-3 **GC**, the establishing of a "district home" in conjunction with other counties under certain conditions. It is with §2557-2 **GC**, that we are here concerned. It reads:

"After a county home has been closed the county commissioners may sell all or parts of the county home farm, or lease all or parts of it, or both, and all receipts from such sales or leases shall be paid to the county treasurer and credited to the general county fund and be subject to appropriation for such purposes as the commissioners may decide."

Plaintiff maintains that the phrase, "after a county home has been closed the county commissioners may sell", constitutes a condition precedent to the right to sell; and that the home in this case not having been closed, the right to sell does not exist. The question is: What was the intention of the Legislature? Does this section control or does §2447 **GC**, apply?

Those two sections are in pari materia and must be construed together. Applying certain rules of statutory construction, one answer is obtained; other rules produce a different result. In support of plaintiff's position is the rule that where there are two statutes concerning the same subject matter, one general and one particular or special, the special prevails. Plaintiff also contends that the phrase is not ambiguous; and that the plain meaning of "after a county home has been closed" is a mandatory condition precedent. It is argued also that historically a county home is located in the country to afford the inmates work and rural surrounding, and a sale would prejudice their rights; and finally, that is the reasonable construction of the statutes.

The defendants argue and the lower court found that §2557-2, **GC**, was directory only, by applying the following rules and reasons: First, §§2557-1, 2557-2 and 2557-3 GC, are all a part of one act which deals primarily not with the sale of county property or the county home but with providing a different setup for the care of indigent people of the county, and that this being so, the Legislature did not intend the incidental powers in §2557-2 GC, to be a limitation on the

general powers granted in §2447 GC. Second, there are no negative words in §§2557-1, 2557-2 and 2557-3 GC, denying the right to sell the property except under the condition named. Third, it is the duty of the courts to harmonize these statutes if possible, which can clearly be done if §2557-2 GC, is construed as directory only. Fourth, an interpretation which makes the words directory is the only way the statute can have a reasonable operation.

It is the court's mature judgment that §2557-2 GC, is directory only and we base that judgment not only upon the above arguments but upon the following additional considerations which we deem important and ultimately controlling.

An important rule of statutory construction is that no construction should be adopted which would produce absurd or unreasonable results and that the Legislature cannot be presumed to have so intended.

We must recognize the fact that the method of taking care of indigent people has changed with the years. However, historically, as far as our search has revealed, it has never been the mandatory duty of a county to take care of its paupers in an infirmary or county home owned and maintained by it. It could make contracts with other infirmaries. Some counties do not and never did operate infirmaries. Nor if a county home was established was it mandatory to place it in the country or to operate a farm in connection therewith, even though as a matter of fact most counties did both. During the rural era in Ohio, in most cases, it was more economical to raise part of the food for the inmates on a farm on which they could do some work than to buy everything. Neither was there ever a mandatory duty to purchase a farm when the site was purchased; nor if a farm was purchased later that it all had to be purchased in one tract or at the same time. There is some authority, the weight of which is open to question, that the various tracts had to be adjacent so as to touch one another.

Now if we give the section the interpretation which plaintiff claims, we would have to say that no matter what conditions arose and no matter when or in how many parcels or for what reasons the various tracts of a county home farm were purchased, not a square foot thereof could ever be sold without first closing the county home. Then, too, we would have to say that since this power undoubtedly did exist by virtue of §2447 GC, prior to 1929, some particular condition arose about that time which impelled the Legislature to change the rule. If so, what could it be?

Certainly it is the duty of the county to feed the charges as economically as possible with the standard of ordinary subsistence. Certainly it is not economical to raise general farm produce or conduct general farming operations on $2,000-an-acre land; any farmer would so agree. That is the testimony in this case. It would be better to sell the farm and buy the food in the open market. Did the Legislature in 1929, knowing of the urban shift of population, intend to perpetuate such a practice? Again, every farmer knows that conditions and farm operations change over the years. At one time a farmer might want to to go in for milk production and accumulate a dairy herd—say a registered Brown Swiss herd. If Bang's disease wipes out the herd, he might want to switch to a corn-hog program. In such a readjustment it would be desirable to eliminate some pasture land and acquire some corn ground. Did the Legislature intend that the county commissioners should be so hog-tied by statute that there never could be any readjustment of acreage on a county farm?

Take another illustration. Suppose a railroad would be located or a highway relocated or a dam built so as to cut off a portion of the farm and make it unavailable for practical use. Was it the intention to prevent a disposal of that acreage and the acquisition of something more suitable? We do not think so.

Now let us inquire for a minute what, if any, conditions arose about 1929 which would cause the Legislature to change a policy and so restrict a thereto necessary and obviously sensible grant of power? We can think of none. We can, however, see why the power to close a county home would be expressly given. Some of the reasons are:

1. The Department of Public Welfare was being expanded and new ideas as to treatment of indigents advocated.

2. Ohio was becoming more urban and real estate values were changing.

3. Farms were being mechanized.

4. The population of county homes was decreasing.

5. Doubt existed among officials, local and state, as to the right of the county commissioners absolutely to close a county home and participate fully in the state welfare program of consolidation and outside relief.

Those facts and others impel us to the conclusion that the main purpose of §§2557-1, 2557-2 and 2557-3 GC, was to provide for the closing of a county home and to permit the making of more economical and elastic arrangements. The power

of sale was only incidental to the main purpose. We do not think the Legislature contemplated that all county homes would be sold. We do not think the Legislature contemplated that all county homes in connection with which there were farms would always be maintained in whole or in part by such farms. We cannot believe that the Legislature intended that farming operations should be conducted upon land the value of which had outgrown farm values.

We hold that §2557-2 GC, is directory and not mandatory.

The second legal proposition presented as to the ownership of the land is settled by the decision of the Supreme Court in the case of **Carder v. Board of Commissioners of Fayette County, 16 Oh St 353,** where it is held that a devise to the county is a devise to the board of commissioners of the county and vests title in it for the uses of the county.

This brings us to a consideration of the last problem presented, the factual one, as to whether the proposed sale is an abuse of discretion. The evidence in the case as to the value of the lands advertised for sale and the resulting effect of that sale on the remaining lands is somewhat in conflict.

The difference of opinion however, is not such as to impel this court to arrive at the conclusion that the decision of the county commissioners in acting in accordance with one set of witnesses was an abuse of discretion. After all this land was put up for public sale in accordance with the statutes governing such sales and after due advertisement and notice. It presumably brought what it was worth. No fraud or irregularities are shown by the record. It might be true that at another time and under different conditions a better price could be obtained. However, this is a matter of judgment. It does not present such a situation where this court would be justified in substituting its judgment for that of the officials in whom, rightly, this discretion is imposed.

In view of the above considerations the decree must be for the defendants herein. It is so ordered.

Decree for defendants.

MONTGOMERY and McCLINTOCK, JJ, concur.