OPINION
{¶ 1} Defendants/Appellants/Cross-Appellees, Linda Green ("Green"), Margaret Warder ("Warder"), Auglaize Acres, and the Auglaize County Board of Commissioners (hereinafter Auglaize Acres and the Auglaize County Board of Commissioners will be jointly referred to as the "County" and all four of the Defendants/Appellants/Cross-Appellees will be referred to collectively as the "Appellants"), appeal from a judgment of the trial court denying in part their motion for summary judgment. The County asserts that the trial court should have dismissed all of the claims against it because it is entitled to political subdivision immunity under R.C. 2744.02(A)(1). Green and Warder maintain that their summary judgment motion should have been granted in whole because they are immune from liability as employees of a political subdivision pursuant to R.C.2744.03(A)(6).
 {¶ 2} On cross appeal, Plaintiff/Appellee/Cross-Appellant, Rex Cramer ("Cramer"), as the administrator of Frank Cramer's estate, challenges the trial court's decision to grant partial summary judgment to the Appellants. Cramer claims that the Appellants are not entitled to immunity under either R.C. 2744.02 or 2744.03. He also argues that R.C. 2744 is unconstitutional.
 {¶ 3} Auglaize Acres is an unlicensed county home. It was created by the Auglaize County Board of Commissioners pursuant to R.C. 307.01(A). In January of 2002, Cramer's father, Frank Cramer ("Frank"), was a resident of Auglaize Acres. On January 27, 2002, at around 8:00 p.m., Frank fell while he was being assisted into bed by Green and Warder. At the time, both Green and Warder were employees of Auglaize Acres. Green was employed as a registered nurse and Warder was employed as a licensed practical nurse.
 {¶ 4} Approximately eight hours after the fall, at around 1:15 a.m., another registered nurse employed by Auglaize Acres, Rosalie Miller ("Miller"), entered Frank's room to check on his condition. Upon entering the room, Miller discovered swelling and bruising in Frank's left leg and foot and observed a deformity above Frank's left knee. Additionally, Frank complained of pain and could not straighten out his left leg. Consequently, Frank was transported to a hospital where it was determined that he had a fractured left femur. In an attempt to repair the femur, Frank was subjected to open reduction surgery. Frank died following the surgery on January 29, 2002.
 {¶ 5} Eventually, Cramer brought suit against Green and Warder individually and against the County as Green and Warder's employer. Cramer's amended complaint contains three claims. The first claim alleges that Green and Warder's negligence resulted in Frank's fall, which supposedly lead to his broken leg and eventual death. Cramer also alleges that Green and Warder aggravated Frank's injury by providing negligent medical care for him after he fell. In the alternative, the first claim also contains allegations that Green and Warder intentionally falsified Frank's medical records and purposefully denied him adequate medical care after his fall in an attempt to conceal the accident. In the second claim, Cramer reasserts the allegations made in the first claim and maintains that these actions violated the Nursing Home Patients' Bill of Rights, which is contained in R.C. 3721.10 through R.C. 3721.19. In the third claim, Cramer contends that Green and Warder intentionally inflicted serious emotional distress upon Frank. Cramer argues in all three claims that the County is liable for the conduct of its employees under the doctrines of respondeat superior and agency by estoppel.
 {¶ 6} In response to Cramer's complaint, the Appellants filed a motion for summary judgment. Appellants asserted that the County should be granted summary judgment on all three claims based upon the political subdivision immunity found in R.C. 2744.02(A)(1). Likewise, Appellants argued that the claims against Green and Warder should be dismissed because they were immune from liability as employees of a political subdivision under R.C. 2744.03(A)(6). In reply, Cramer filed a brief in opposition to the summary judgment motion, claiming that none of the Appellants were entitled to immunity.
 {¶ 7} Thereafter, the trial court issued a judgment entry, granting in part and denying in part Appellants' summary judgment motion. As to Green and Warder, the trial court granted summary judgment on Cramer's first claim in so far as that claim alleged negligence on their part. The trial court granted the County summary judgment on Cramer's first and second claim in so far as those claims sought punitive and exemplary damages. The trial court also granted the County summary judgment on Cramer's third claim in toto. The trial court denied the Appellants' summary judgment motion in all other aspects. Appellants appeal from this decision, presenting the following assignments of error for our review.
 Appellants' Assignment of Error I The trial court erred in determining that the operation of a countyhome is a proprietary function as defined in R.C. 2744.01(G).
 Appellants' Assignment of Error II The trial court erred in finding that a cause of action is specificallyallowed by statute for the alleged negligence of employees of a politicalsubdivision for the operation of an unlicensed county home.
 Appellants' Assignment of Error III The trial court erred in determining that R.C. 3721.17(I)(1)(a)specifically created a cause of action against defendants Green and Warderfor allegedly committing a violation of the resident's rights anddetermining that R.C. 3721.17(I)(1)(a) controls over R.C. 2744.03.
 Appellants' Assignment of Error IV The trial court erred in finding that R.C. 2744.03(A)(6)(b) does notprovide defendants Green and Warder with immunity from Plaintiff's claimof intentional infliction of serious emotional distress.
 {¶ 8} On cross appeal, Cramer presents the following assignments of error for our review.
 Cross-Appellant's Assignment of Error I The court erred in ruling that Plaintiff's first cause of action isdismissed in so far as it is an action in negligence against defendantsGreen and Warder.
 Cross-Appellant's Assignment of Error II The court erred in ruling that (1) "Plaintiff's first and second causesof action are dismissed with respect to Defendants county commissionersand Auglaize Acres, in so far as they seek punitive and exemplarydamages", and (2) "Plaintiffs third cause of action is dismissed withrespect to Defendant Auglaize County Commissioners and Auglaize Acres."
 Cross-Appellant's Assignment of Error III The trial court erred by engaging in the governmental immunity analysisbecause Chapter 2744 of the Ohio Revised Code is unconstitutional.
 {¶ 9} Due to the nature of these assignments of error, we elect to address them out of order; however, because all seven assignments of error address the trial court's decision regarding summary judgment, we will use the following standard of review throughout this entire opinion.
 Standard of Review {¶ 10} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp., 73 Ohio St.3d 679, 686-687,1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-59,1992-Ohio-95.
 {¶ 11} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. AthensCity Clerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Cross-Appellant's Assignment of Error III {¶ 12} In his third assignment of error, Cramer maintains that R.C. 2744 is unconstitutional. Thus, he contends that Appellants are not entitled to immunity under that statute.
 {¶ 13} Cramer's argument that R.C. 2744 is unconstitutional is based upon the Supreme Court's plurality decision in Butler v. Jordan,92 Ohio St.3d 354, 372, 2001-Ohio-204. This Court has already considered such an argument in detail and rejected the suggestion that R.C. 2744 is unconstitutional. Thompson v. Bagley, 3rd Dist. No. 11-04-12, 2005-Ohio-1921, at ¶ 13-25. Relying on our decision in Thompson, we overrule Cramer's third assignment of error.
 Appellants' Assignments of Error I II and Cross-Appellant's Assignment of Error II {¶ 14} Appellants' first and second assignments of error and Cramer's second assignment of error all challenge the trial court's application of R.C. 2744 with regard to the County. Accordingly, we will address all three assignments of error together.
 {¶ 15} In their first and second assignments of error, the Appellants claim that the operation of an unlicensed county home is not a proprietary function and that the trial court erred by ruling that the exception to immunity in R.C. 2744.02(B)(2) applies to the facts of this case. In his second assignment of error, Cramer asserts that the trial court erred by granting the County summary judgment with respect to his first and second claims in so far as those claims sought punitive and exemplary damages. Additionally, Cramer contends that the trial court erred by dismissing his third claim against the County in its entirety.
 The County's Immunity {¶ 16} A reviewing court must engage in a three-tiered analysis to determine whether a political subdivision is entitled to immunity from civil liability pursuant to R.C. 2744. Hubbard v. Canton Cty. Schl. Brd.Of Ed., 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 10, citing Cater v.Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421. The first tier in this analysis is to determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or propriety function. R.C. 2774.02(A)(1);Hubbard at ¶ 10. The general rule is that political subdivisions are not liable in damages. Id. If it is determined that an entity is a political subdivision entitled to immunity under the first tier in the analysis, then the court must move to the second tier and determine whether any of the exceptions to liability enumerated in R.C. 2744.02(B) apply. Hubbard
at ¶ 12, citing Cater, 83 Ohio St.3d at 28. If any of the R.C. 2744.02(B) exceptions to immunity are found to be applicable, then the political subdivision can reinstate immunity under the third tier by proving that one of the defenses to liability in R.C. 2744.03 applies. Cater,83 Ohio St.3d at 28.
 {¶ 17} Herein, neither side disputes the fact that the County is a political subdivision under R.C. 2744.01(F) or that the alleged injury occurred in connection with either a governmental or a proprietary function. Therefore, the first tier of the immunity test is satisfied, and the County is presumed to be immune from liability unless one of the exceptions listed in R.C. 2744.02(B) applies.
 {¶ 18} In pertinent part, R.C. 2744.02(B) at the time of Frank's death[1] provided that:
[A] political subdivision is liable in damages in a civil action forinjury, death, or loss to person or property allegedly caused by an actor omission of the political subdivision or of any of its employees inconnection with a governmental or proprietary function, as follows:
* * *
(2) Except as otherwise provided in sections 3314.07 and 3746.24 of theRevised Code, political subdivisions are liable for injury, death, orloss to person or property caused by the negligent performance of acts bytheir employees with respect to proprietary functions of the politicalsubdivisions.
* * *
(4) Except as otherwise provided in section 3746.24 of the RevisedCode, political subdivisions are liable for injury, death, or loss toperson or property that is caused by the negligence of their employees andthat occurs within or on the grounds of buildings that are used inconnection with the performance of a governmental function, including,but not limited to, office buildings and courthouses, but not includingjails, places of juvenile detention, workhouses, or any other detentionfacility, as defined in section 2921.01 of the Revised Code.
 (5) In addition to the circumstances described in divisions (B)(1) to(4) of this section, a political subdivision is liable for injury,death, or loss to person or property when liability is expressly imposedupon the political subdivision by a section of the Revised Code,including, but not limited to, sections 2743.02 and 5591.37 of theRevised Code. Liability shall not be construed to exist under anothersection of the Revised Code merely because a responsibility is imposedupon a political subdivision or because of a general authorization that apolitical subdivision may sue and be sued.
 {¶ 19} None of these exceptions specifically eliminate a political subdivision's immunity for acts that rise to the level of intentional torts. Accordingly, Ohio courts have consistently held that only negligence claims are subject to the R.C. 2744.02(B) exceptions and "that political subdivisions are immune from intentional tort claims." Sabulskyv. Trumbull County, 11th Dist. No. 2001-T-0084, 2002-Ohio-7275, at ¶ 14, appeal not allowed by 98 Ohio St.3d 1567; see, also, Wilson v. StarkCity Dept. of Human Services, 70 Ohio St.3d 450, 452, 1994-Ohio-394
("There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress as alleged in this case."); Thayer v. West Carrollton Brd. Of Ed., 2nd Dist. No. 20063, 2004-Ohio-3921, at ¶ 14-17, appeal not allowed by 104 Ohio St.3d 1426
("Because an intentional tort is not the result of negligence, an intentional tort is not an exception to the broad immunity generally enjoyed by political subdivisions."); Chase v. Brooklyn City Schl. Dist.
(2001), 141 Ohio App.3d 9, 19, appeal not allowed by 91 Ohio St.3d 1529
("Because Section 2744.02(B) includes no specific exceptions for intentional torts, courts have consistently held that political subdivisions are immune from intentional tort claims."); Fabian v.Steubenville, 7th Dist. No. 00 JE 33, 2001-Ohio-3522, ("[P]olitical subdivisions are immune from intentional tort claims as R.C. § 2744.02(B) contains no specific exceptions for intentional torts * * *."); Bays v.Northwestern Local Schl. Dist. (July 21, 1999), 9th Dist. No. 98CA0027, ("R.C. 2744.02(B) imposes liability upon a political subdivision only for alleged negligent conduct. * * * Furthermore, a political subdivision is not liable for alleged intentional torts.").
 {¶ 20} Cramer's third claim was based solely on the intentional infliction of emotional distress. Therefore, the trial court was correct in granting the County summary judgment with respect to this claim because it involved only an intentional tort allegation and none of the exceptions to immunity in R.C. 2744.02(B) could have applied. Wilson,70 Ohio St.3d at 452. Accordingly, the second portion of Cramer's second assignment of error is overruled. However, the intentional infliction of emotional distress claim was not the only intentional tort alleged by Cramer. His first claim also alleged that employees of the County had intentionally deprived Frank of proper medical care and intentionally falsified Frank's medical records in an attempt to cover up his injury. Likewise, Cramer's second claim alleged that these intentional actions on the part of the County's employees violated the Nursing Home Patients' Bill of Rights. Consequently, the trial court should have also granted the County summary judgment on Cramer's first and second claims in so far as those claims alleged intentional torts. To the extent that the trial court failed to do so, its judgment is in error.
 {¶ 21} Continuing with the second tier of the analysis, this Court must determine whether any of the R.C. 2744.02(B) exceptions to immunity apply to the negligence allegations raised in Cramer's first and second claims.
 {¶ 22} The parties herein dispute whether the operation of an unlicensed county home is a governmental or proprietary function. The County contends that such an activity is a governmental function as defined in R.C. 2744.01(C)(1)(c) and that it was error for the trial court to find that the exception to immunity in R.C. 2744.02(B)(2) applies. In contrast, Cramer contends that the operation of an unlicensed county home is a proprietary function and that it was proper for the trial court to apply the exception in R.C. 2744.02(B)(2).
 {¶ 23} R.C. 2744.01(C)(1) defines a governmental function as:
[A] function of a political subdivision that is specified in division(C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation ofsovereignty and that is performed by a political subdivision voluntarilyor pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of thestate;
 (c) A function that promotes or preserves the public peace, health,safety, or welfare; that involves activities that are not engaged in ornot customarily engaged in by nongovernmental persons; and that is notspecified in division (G)(2) of this section as a proprietary function.
 {¶ 24} A county home, licensed or otherwise, is not specified as a governmental function in R.C. 2744.01(C)(2). Therefore, we must look to the definitions in R.C. 2744.01(C)(1) to determine whether the operation of an unlicensed county home is a governmental function. If a function satisfies any one of the definitions listed in R.C. 2744.01(C)(1)(a), (b), or (c) it is considered a governmental function.
 {¶ 25} R.C. 2744.01(C)(1)(a) provides that a function is considered governmental if it is imposed upon the State as an obligation of sovereignty. The decision to operate a county home is within the sound discretion of the board of county commissioners. R.C. 307.01(A); Starlingv. Metrohealth Center Skilled Nursing (Sept. 2, 1999), 8th Dist. No. 75554, appeal not allowed by 87 Ohio St.3d 1494, citing Seran v. Biddle
(1949), 86 Ohio App. 1, 5; see, also, 1987 Ohio Op. Atty. Gen. No. 87-039. As such, "the government is not required to operate a county home as an obligation of sovereignty," and the operation of a county home does not fall within the definition of a governmental function in R.C.2744.01(C)(1)(a). Starling supra.
 {¶ 26} R.C. 2744.01(C)(1)(b) states that a function is governmental if it is carried out for the common good of all of the citizens of the State. A county home benefits only some of the citizens of the State, not all of the citizens. Id. Accordingly, the operation of a county home does not qualify as a governmental function under R.C. 2744.01(C)(1)(b) either. Id.; see, generally, Ryll v. Columbus Fireworks Display Co.,Inc., 95 Ohio St.3d 467, 2002-Ohio-2584, at ¶ 24, quoting Greene Cty.Agricultural Soc. v. Liming, 89 Ohio St.3d 551, 559, 2000-Ohio-486.
 {¶ 27} Finally, R.C. 2744.01(C)(1)(c) provides that a function is governmental if it is not customarily engaged in by nongovernmental persons. The County argues that it is this definition of a governmental function that applies to an unlicensed county home. The logic behind this argument is that, by definition, nongovernmental entities can not operate an unlicensed county home. Thus, the County maintains that the operation of an unlicensed county home is not an activity that can be engaged in by nongovernmental persons.
 {¶ 28} In order to accept the County's argument, we would have to ignore the underlying nature of a county home and look only at the formal title attached to it. However, this approach to R.C. 2744.01(C)(1)(c) was rejected by the Supreme Court in Greene Cty. Agricultural Soc. v.Liming, 89 Ohio St.3d 551, 560, 2000-Ohio-486. In Greene, the Court stated that:
In resolving this question, we must first recognize that a centralconsideration within the structure of R.C. Chapter 2744 is the premisethat some activities of a political subdivision may be governmentalfunctions, while some other activities are not. Thus, the issue here isnot whether holding a county fair is a governmental function; rather, itis the more specific question of whether conducting the hog show at thecounty fair and conducting the investigation into the allegations ofirregularity surrounding the entry of Big Fat in that hog show aregovernmental functions.
Id. The Court went on to find that even though the activity of conducting a county fair is not engaged in by nongovernmental persons, the activity of "conducting a livestock competition is an activity customarily engaged in by nongovernmental persons." Id. (Emphasis in original).
 {¶ 29} Applying Greene, it is clear that R.C. 2744.01(C)(1)(c) does not define a function as governmental based on the type of entity engaged in the activities. Rather, the statute looks to the nature of the activities themselves to determine whether a function is governmental.
 {¶ 30} Under the facts of the case sub judice, it must be admitted that a nongovernmental entity can not operate a "county home"; however, Frank's alleged injuries occurred during activities that were essentially the same as those performed by nongovernmental nursing homes and adult living facilities. Accordingly, the alleged negligence leading to Frank's injury occurred during activities that are customarily engaged in by nongovernmental persons, and R.C 2744.01(C)(1)(c) does not apply.
 {¶ 31} A proprietary function is defined by R.C. 2744.01(G)(1) as:
[A] function of a political subdivision that is specified in division(G)(2) of this section or that satisfies both of the following:
 (a) The function is not one described in division (C)(1)(a) or (b) ofthis section and is not one specified in division (C)(2) of thissection;
 (b) The function is one that promotes or preserves the public peace,health, safety, or welfare and that involves activities that arecustomarily engaged in by nongovernmental persons.
 {¶ 32} R.C. 2744.01(G)(2) does not specify the operation of a county home as a proprietary function. Thus, we must look to the definition contained in R.C. 2744.01(G)(1) to determine if it is a proprietary function.
 {¶ 33} According to R.C. 2744.01(G)(1), a function must satisfy both subsection (a) and (b) in order to be considered a proprietary function. R.C. 2744.01(G)(1)(a) states that the function can not be one as described in R.C. 2744.01(C)(1)(a), (b), or (C)(2). As we have already stated above, the operation of a county home does not fall into any of these definitions of a governmental function, and the first prong of the definition of a proprietary function is satisfied.
 {¶ 34} In the second prong, R.C. 2744.01(G)(1)(b) provides that the function must involve activities customarily engaged in by nongovernmental persons. Again, as we have discussed above, the operation of a county home involves activities which are customarily involved in by nongovernmental persons. Accordingly, the second prong of the definition is also satisfied. As a result, the alleged negligence leading to Frank's injury was caused by employees of the County in connection with a proprietary function, and the trial court did not err in making the same finding. Therefore, the County's first and second assignments of error are overruled, and the exception to immunity listed in R.C. 2744.02(B)(2) is applicable to the facts of the case before us.
 {¶ 35} We note that while we have determined that the exception to immunity in R.C. 2744.02(B)(2) is applicable, we have not determined the underlying issues of negligence and causation. A material issue of fact still remains concerning whether Frank's injury was caused and/or exacerbated by the negligence of the County's employees. The exception to R.C. 2744.02(B)(2) will only provide an exception to the County's immunity if Green and Warder are found to have been negligent.
 {¶ 36} Cramer also argues that the exceptions to immunity listed in R.C. 2744.02(B)(4) and (5) apply. However, the exception to immunity in R.C. 2744.02(B)(4) is irrelevant, because that exception applies only to governmental functions. Cramer's claim that R.C. 2744.02(B)(5) applies relies on the assertion that Green and Warder's allegedly negligent actions violated R.C. 3721.17(I)(1)(a). However, the allegedly negligent actions that Cramer asserts violated R.C. 3721.17(I)(1)(a) are the same allegedly negligent actions that we have already found are subject to the R.C. 2744.02(B)(2) exception. Thus, if it is determined that Green and Warder negligently caused and/or exacerbated Frank's death and/or injury, then the County's immunity would be abrogated by R.C. 2744.02(B)(2) and the issue of whether the exception in 2744.02(B)(5) also applies would be moot. Likewise, if it is found that Green and Warder did not negligently cause and/or exacerbate Frank's death and/or injury, Cramer would have no claim under R.C. 3721.17(I)(1)(a) and the exception to immunity in R.C. 2744.02(B)(5) would not apply. Consequently, we need not address the issue of whether the exception in R.C. 2744.02(B)(5) is applicable.
 {¶ 37} Having found that the County's political subdivision immunity is subject to the exception in R.C. 2744.02(B)(2), we must proceed to the third tier of the political subdivision immunity analysis and determine whether the County's immunity can be reinstated via any of the R.C. 2744.03
defenses to liability.
 {¶ 38} Under R.C. 2744.03, immunity that has been abrogated by a R.C.2744.02(B) exception "can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03
applies." Cater, 83 Ohio St.3d at 28. The County claims that the defenses in R.C. 2744.03(A)(3) and (5) apply to the facts of the case before us. Those defenses are as follows:
(3) The political subdivision is immune from liability if the action orfailure to act by the employee involved that gave rise to the claim ofliability was within the discretion of the employee with respect topolicy-making, planning, or enforcement powers by virtue of the duties andresponsibilities of the office or position of the employee.
* * *
(5) The political subdivision is immune from liability if the injury,death, or loss to person or property resulted from the exercise ofjudgment or discretion in determining whether to acquire, or how to use,equipment, supplies, materials, personnel, facilities, and otherresources unless the judgment or discretion was exercised with maliciouspurpose, in bad faith, or in a wanton or reckless manner.
 {¶ 39} The defense in R.C. 2744.03(A)(3) is not applicable to the case sub judice because the allegedly negligent actions of Green and Warder did not involve "policy-making, planning, or enforcement powers." Therefore, the County can not utilize R.C. 2744.03(A)(3) to reinstate its immunity.
 {¶ 40} However, Green and Warder's allegedly negligent actions did involve "discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources." R.C. 2744.03(A)(5). This Court has previously held that the decision of how to provide medical care is a discretionary decision subject to the defense found in R.C. 2744.03(A)(5). Thompson at ¶ 47, citing Schirger v. City of Brook Park (Oct. 23, 1997), 8th Dist. No. 71739. Green and Warder's decision regarding how to move Frank into bed and their reaction to his subsequent fall are examples of such discretionary actions. Therefore, the County can raise the defense in R.C. 2744.03(A)(5) with regard to Cramer's claims that arise from Green and Warder's alleged negligence, and the trial court erred by failing to consider such a defense.
 {¶ 41} Nevertheless, this does not end our inquiry into R.C.2744.03(A)(5). Immunity will be reinstated under this defense when the loss is based on a discretionary decision that relates to the use of "equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C.2744.03(A)(5) (Emphasis added). Therefore, we must construe the evidence in a light most favorable to Cramer and determine whether reasonable minds could find that there is a material issue of fact that Green and Warder's actions rose to the level of either malice, bad faith, wantonness, or recklessness.
 {¶ 42} In the context of political subdivision immunity, malicious purpose has been defined as the willful and intentional design to do injury. Piro v. Franklin Township (1995), 102 Ohio App.3d 130, 139, citing Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991),76 Ohio App.3d 448, 453. Bad faith "connotes a `dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id., quoting Slater v. Motorists Mut. Ins. Co. (1962), 174 Ohio St. 148, paragraph two of the syllabus. Wanton misconduct is the failure to exercise any care whatsoever and establishes a disposition to perversity on the part of the tortfeasor. Fabrey v. McDonald Village Police Dept.,70 Ohio St.3d at 356. "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." Id. Finally, reckless "conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." Piro, 102 Ohio App.3d at 139, citing Thompson v.McNeill (1990), 53 Ohio St.3d 102, 104-105, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.
 {¶ 43} After reviewing the entire record, we find that there is a material issue of fact concerning whether Green and Warder acted maliciously, in bad faith, wantonly, or recklessly. Cramer's complaint and the affidavit of at least one expert allege that Green and Warder purposefully concealed Frank's injury and falsified his medical records in an effort to cover up their negligence. The affidavit also alleges that Green and Warder's intentional actions caused Frank to suffer undue pain for approximately five hours. Moreover, there is at least some circumstantial evidence supporting these allegations. Thus, a material issue of fact remains concerning whether Green and Warder's actions rose to the level of malice, bad faith, wantonness, or recklessness. If Cramer is unable to show that their actions rose to such a level, the County's immunity is reinstated via R.C. 2744.03(A)(5).
 Punitive and Exemplary Damages against a Political Subdivision {¶ 44} Cramer also argues that the trial court erred in dismissing his claims against the County in so far as those claims sought punitive and exemplary damages. R.C. 2744.05 provides as follows:
Notwithstanding any other provisions of the Revised Code or rules of acourt to the contrary, in an action against a political subdivision torecover damages for injury, death, or loss to person or property causedby an act or omission in connection with a governmental or proprietaryfunction:
 Punitive or exemplary damages shall not be awarded.
 {¶ 45} In the case sub judice, neither side disputes the fact that the County is a political subdivision under R.C. 2744.01(F) or that Cramer's negligence claims involve the death of a person allegedly caused by acts or omissions in connection with a governmental or proprietary function. Applying the clear and unambiguous language of R.C. 2744.05(A), we find that the statute prohibits Cramer from collecting punitive or exemplary damages from the County in the current action. Accordingly, the first portion of Cramer's second assignment of error is overruled, and it was not error for the trial court to dismiss Cramer's first and second claims against the County with respect to punitive and exemplary damages.
 Appellants' Assignments of Error III IV and Cross-Appellant's Assignment of Error I {¶ 46} Appellants' third and fourth assignments of error and Cramer's first assignment of error all challenge the trial court's findings regarding Green and Warder's individual immunity under R.C. 2744.03. As such, we elect to address all three assignments of error collectively.
 {¶ 47} In its third assignment of error, the County maintains that the trial court erred by holding that R.C. 3721.17(I)(1)(a) expressly imposes liability upon Green and Warder. In its fourth assignment of error, the County claims that the trial court erred by not dismissing the intentional infliction of serious emotional distress claim against Green and Warder. In his first assignment of error, Cramer asserts that the trial court erred by dismissing his negligence claims against Green and Warder.
 {¶ 48} Initially, we note that both parties to this appeal incorrectly attempt to apply the three-tiered analysis formulated by the Supreme Court in Cater to the question of Green and Warder's individual immunity as employees of a political subdivision. R.C. 2744.02 refers only to the immunity granted to political subdivisions. It does not bestow immunity upon employees of a political subdivision. Thus, the three-tiered analysis used to determine whether a political subdivision is immune from liability does not apply to the determination of whether individual employees of a political subdivision are immune from liability. Thorp v.Strigari, 155 Ohio App.3d 245, 2003-Ohio-5954, at ¶ 31, citingFabrey, 70 Ohio St.3d at 356, 1994-Ohio-368. "When a plaintiff sues an individual employee of a political subdivision, the analysis begins with R.C. 2744.03(A)(6)." Id.
 {¶ 49} According to R.C. 2744.03(A)(6), an employee of a political subdivision is
immune from individual liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scopeof the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, inbad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section ofthe Revised Code.[2]
 {¶ 50} None of Cramer's allegations against either Green or Warder involve actions that were outside of the scope of their employment or official responsibilities. Therefore, the exception to immunity in R.C. 2744.0.3(A)(6)(a) does not apply.
 {¶ 51} Furthermore, no section of the Revised Code expressly imposes liability upon either Green or Warder. The only section of the revised code that Cramer contends imposes liability upon either of them is R.C.3721.17(I)(1)(a), which states that:
Any resident whose rights under sections 3721.10 to 3721.17 of theRevised Code are violated has a cause of action against any person orhome committing the violation.
 {¶ 52} The above language does not expressly impose liability upon the employees of a political subdivision or, more specifically, employees of an unlicensed county home. Rather, it imposes liability upon "homes" and all persons in general, but not employees. This Court has recently held that a statute imposing general sanctions on everyone rather than a group of specific individuals (e.g. teachers or school administrators) is not a statute that expressly imposes liability upon employees of a political subdivision for the purposes of the R.C. 2744.03(A)(6)(c) exception to immunity. Thompson at ¶ 56, citing Ratcliff v. Darby, 4th Dist. No. 02CA2832, 2002-Ohio-6626, at ¶ 19-21. Accordingly, the trial court erred in so far as it found that R.C. 3721.17(I)(1)(a) expressly created a right of action against Green and Warder, and the County's third assignment of error is sustained. Because there is no statute expressly
imposing liability upon Green and Warder, R.C. 2744.03(A)(6)(c) does not abrogate their immunity.
 {¶ 53} Turning to R.C. 2744.03(A)(6)(b), we defer to our earlier analysis concerning the definition of malice, bad faith, wantonness, and recklessness. As stated earlier, a material issue of fact remains concerning whether Green and Warder acted maliciously, in bad faith, wantonly, or recklessly, and the matter should be determined by the trier of fact upon remand. Accordingly, the trial court was correct in not granting Green and Warder summary judgment on Cramer's allegations that were based on intentional tort, and the County's fourth assignment of error is overruled.
 {¶ 54} Furthermore, because R.C. 2744.03(A)(6) does not include negligence among the actions that abrogate an employee's immunity, Green and Warder are individually immune from liability for their allegedly negligent conduct. See, Wooden v. Kentner, 153 Ohio App.3d 24,2003-Ohio-2695, at ¶ 15. Consequently, the trial court was correct in dismissing Cramer's first claim against Green and Warder in so far as that claim was based upon alleged negligence, and Cramer's first assignment of error is overruled. Nevertheless, the trial court erred by not granting Green and Warder summary judgment to the extent that Cramer's second claim also was based upon alleged negligence.
 Summary {¶ 55} In sum, the County is a political subdivision entitled to immunity under R.C. 2744.02(A)(1). Furthermore, none of the exceptions in R.C. 2744.02(B) apply to intentional torts, and R.C. 2744.05(A) prohibits the recovery of punitive or exemplary damages from a political subdivision. Therefore, the trial court was correct in dismissing Cramer's third claim against the County and all of Cramer's claims against the County that sought punitive or exemplary damages. However, the trial court erred when it failed to grant the County summary judgment on Cramer's first two claims in so far as those claims alleged intentional torts. Therefore, the trial court's judgment is reversed in this respect.
 {¶ 56} With regard to R.C. 2744.02(B)(2), the trial court was correct in finding that this exception to immunity applied. However, the trial court failed to properly consider the defenses available to the County in R.C. 2744.03. As a material issue of fact remains concerning whether Green and Warder's alleged negligence rose to the level of maliciousness, bad faith, wantonness, or recklessness, it was error for the trial court to not address R.C. 2744.03(A)(5). In this respect, the trial court's judgment is also reversed.
 {¶ 57} With regard to Green and Warder's individual liability, material issues of fact remain unresolved concerning whether Green and Warder's conduct rose to the level of malice, bad faith, wantonness, and recklessness, and the trial court was correct in not granting them summary judgment in so far as Cramer's claims alleged intentional torts. The trial court was also correct in granting Green and Warder summary judgment with respect to Cramer's first claim in so far as that claim alleged negligence. However, the trial court erred by failing to also grant Green and Warder summary judgment on Cramer's second claim in so far as that claim alleged negligence. The trial court also erred by finding that R.C. 3721.17(I)(1)(a) expressly imposed liability upon Green and Warder. In these respects, the judgment of the trial court is reversed.
 {¶ 58} Having found error prejudicial to the appellants herein, in the particulars assigned and argued, we reverse in part and affirm in part the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 Cupp, P.J., and Bryant, J., concur.
[1] An amended version of R.C. 2744.02(B)(4) went into effect on April 9, 2003. The current version now excludes from liability only negligence that "is due to physical defects within or on the grounds of" a building being used by a political subdivision for a governmental function. Furthermore, the amendment changed the wording of R.C. 2744.02(B)(5), which now states that only the imposition of civil liability by a section of the Revised Code invokes an exception to immunity. These changes were not a part of the statutory language at the time of Frank's death and will not be considered in this opinion. "We are bound to apply the words of the law in effect at the time the alleged negligent acts occurred."Hubbard at ¶ 17.
[2] Like R.C. 2744.02(B)(4) and (5), 2744.03(A)(6)(c) was revised on April 9, 2003. The revised version now abrogates an individual's immunity only when civil liability is expressly imposed by another section of the Revised Code. However, as stated earlier, we must apply the words of the law as it was written at the time the alleged negligence occurred.Hubbard at ¶ 17.