CRAMER, ADMR., APPELLANT, *v.* AUGLAIZE ACRES ET AL., APPELLEES.

[Cite as *Cramer v. Auglaize Acres,* 113
Ohio St.3d 266, 2007-Ohio-1946.]

(No. 2005–1629—Submitted October 18, 2006—Decided May 9, 2007.)

LANZINGER, J.

{¶ 1} In this discretionary appeal, we are asked whether governmental immunity, as set forth in R.C. Chapter 2744,[1] applies to an unlicensed county nursing home and its employees. We hold that R.C. 3721.17(I)(1)[2] specifically abrogates governmental immunity and grants a cause of action to residents of unlicensed county nursing homes against a political subdivision for violations of R.C. 3721.10 through 3721.17, the Ohio Nursing Home Patients' Bill of Rights.

## Case Procedure

{¶ 2} Frank Cramer was 71 years old and a resident of Auglaize Acres, a county home created by the Auglaize County Board of County Commissioners pursuant to R.C. 307.01(A). On January 27, 2002, around 8:00 p.m., Frank fell

---

1. Citations to R.C. 2744.02 and 2744.03 throughout this opinion refer to the version in effect as of January 2002. Am.Sub.S.B. No. 108, 149 Ohio Laws, Part I, 382.

2. Citations to R.C. 3721.17 throughout this opinion refer to the version of that statute as it existed in January 2002. Am.Sub.H.B. No. 94, 149 Ohio Laws, Part III, 4126, 4748–4751. The current version is substantially similar.

while two nurses employed by the home were helping him into bed using a Hoyer lift.[3] Approximately five hours later, another nurse saw that Frank was in pain and that he had swelling in his left leg and foot and a deformity of the leg above the knee. He was taken to the hospital, where he was diagnosed with a fractured left femur. Following surgery to repair the break, Frank died on January 29, 2002.

{¶ 3} Appellant Rex Cramer, Frank's son, filed a complaint as administrator of his father's estate against appellees Auglaize Acres, the county commissioners, and Auglaize Acres employees Linda Green, R.N., and Margaret Warder, L.P.N. Cramer's first amended complaint alleged negligence or, in the alternative, falsification of medical records, intentional infliction of emotional distress, and violations of the Ohio Nursing Home Patients' Bill of Rights ("Patients' Bill of Rights"). The complaint also claimed that the county was liable for its employees' actions under theories of respondeat superior and agency by estoppel. Appellees asserted a general denial and raised the defense of governmental immunity, as well as other affirmative defenses.

{¶ 4} Appellees filed a motion for summary judgment, asserting that Auglaize Acres and the Auglaize County Board of County Commissioners were protected by the political subdivision immunity set forth in R.C. 2744.02(A)(1) and the defenses available in R.C. 2744.03(A)(3) and (5) and that Green and Warder were immune from liability, as employees of a political subdivision, under R.C. 2744.03(A)(6).

{¶ 5} Appellees' motion was granted in part and denied in part. The trial court granted summary judgment to Green and Warder on the claim of negligence. It granted summary judgment to Auglaize Acres and the Auglaize County Board of County Commissioners ("the county appellees") on the claim of intentional infliction of emotional distress and on the claims of negligence and violation of patient rights insofar as punitive damages were sought. It denied the summary judgment motion in all other aspects, finding that the allegation of wanton and reckless conduct precluded Green and Warder's defense of immunity on the claim for intentional infliction of emotional distress, that R.C. 3721.17(I)(1) created a cause of action against the nurses for allegedly violating Frank's rights, and that the county appellees were not immune for their employees' negligence.

{¶ 6} Appellant and appellees appealed to the Third District Court of Appeals, with Cramer challenging the trial court's application of governmental immunity as well as the constitutionality of R.C. Chapter 2744.

---

3. A Hoyer lift is a device used to help get patients in and out of bed. It involves placing a sling under a patient and attaching the sling to a metal frame with chains. The patient is then lifted, and the frame is maneuvered to the desired location.

{¶ 7} The Third District Court of Appeals affirmed in part and reversed in part. *Cramer v. Auglaize Acres,* Auglaize App. No. 2–04–39, 2005-Ohio-3609, 2005 WL 1662038. The court of appeals affirmed the granting of summary judgment to the county appellees on the claim for intentional infliction of emotional distress; it agreed that the operation of the county home was a proprietary function and that R.C. 2744.05(A) prohibited Cramer from collecting punitive damages against Auglaize Acres or the county commissioners; and it affirmed the holding that Green and Warder were not protected against allegations of intentional tort.

{¶ 8} On the other hand, the court of appeals held that the trial court erred in failing to grant summary judgment to the county appellees on the claims to the extent that they alleged intentional actions, in failing to consider a defense under R.C. 2744.05(A)(5) that Green and Warder's decisions in providing medical care were discretionary, and in holding that R.C. 3721.17(I)(1) imposed liability on Green and Warder for violations of the Patients' Bill of Rights. We accepted appellant Cramer's request for a discretionary appeal and agreed to determine whether governmental immunity, as set forth in R.C. Chapter 2744, applies to an unlicensed county nursing home and its employees when they are sued for violations of the Patients' Bill of Rights. It will not be necessary to reach the issue of whether R.C. Chapter 2744 is unconstitutional. See *Smith v. Leis,* 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 54 ("courts decide constitutional issues only when absolutely necessary"). We hold that R.C. 3721.17(I)(1) specifically grants a cause of action to residents of county nursing homes, including unlicensed homes, against a political subdivision for violations of R.C. 3721.10 through 3721.17, the Patients' Bill of Rights.

## Patients' Bill of Rights

{¶ 9} Enacted in 1978, Am.Sub.H.B. No. 600, 137 Ohio Laws, Part II, 3064 ("H.B. 600"), set forth a nonexhaustive list of rights for the safety, treatment, privacy, and civil rights of nursing home patients. Previous legislation had been viewed as ineffective in ensuring the humane treatment of nursing home patients. Note, H.B. 600: Ohio's Bill of Rights for Nursing Home Patients (1980), 5 U.Dayton L.Rev. 507, 508–509. The goal of H.B. 600 was " '*not* to give *special* treatment to residents of nursing homes [but] to restore those human rights which have been eroded by misunderstanding, administrative convenience, or neglect.' " (Emphasis sic.) Id. at 510–511, quoting Ohio Nursing Home Comm., 113th Gen. Assembly, Final Report (July 1979) 10.

{¶ 10} Currently, R.C. 3721.13 enumerates 32 subsections that outline a nursing home resident's rights, which include the right to a safe and clean living environment; [4] to be free from physical, verbal, mental, and emotional abuse; [5] to

---

4. R.C. 3721.13(A)(1).

5. R.C. 3721.13(A)(2).

adequate and appropriate medical treatment and nursing care; [6] to confidential treatment of personal and medical records; [7] to be free from certain physical or chemical restraints;[8] to exercise all civil rights; [9] to observe religious obligations and participate in religious activities; [10] and to voice grievances without discrimination or reprisal.[11] The administrator of the home is required to prominently post a copy of the nursing home patients' rights as listed in R.C. 3721.13.[12]

{¶ 11} There are three alternative remedies when a nursing home resident's rights under R.C. 3721.10 to 3721.17 have been violated: (1) the resident may file a grievance with a grievance committee established pursuant to R.C. 3721.12(A)(2),[13] (2) anyone who believes that a resident's rights have been violated may file a report with the department of health,[14] and (3) a resident or the resident's sponsor may file a civil lawsuit against any person or home committing the violation.[15] "The right to private action was included in the statute specifically because those who drafted the statute distrusted the Department of Health." Note, H.B. 600: Ohio's Bill of Rights for Nursing Home Patients (1980), 5 U.Dayton L.Rev. 507, 523, fn. 108.

{¶ 12} In this case, Cramer opted to file suit against the Auglaize County Board of County Commissioners, the nursing home, and the two nurses attending to his father when he fell out of the Hoyer lift. Appellees all contend that they are immune to the claims brought against them pursuant to R.C. 3721.10 through 3721.17.

### Governmental Immunity

{¶ 13} In 1985, the General Assembly enacted R.C. Chapter 2744, the Political Subdivision Tort Liability Act, in response to the judicial abolishment of common-

---

6. R.C. 3721.13(A)(3).

7. R.C. 3721.13(A)(10).

8. R.C. 3721.13(A)(13).

9. R.C. 3721.13(A)(15).

10. R.C. 3721.13(A)(20).

11. R.C. 3721.13(A)(31).

12. R.C. 3721.12(C)(1).

13. R.C. 3721.17(A).

14. R.C. 3721.13(B).

15. R.C. 3721.17(I)(1).

law sovereign immunity by this court's decision in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. We described the framework for political subdivision immunity under R.C. Chapter 2744 in *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781:

{¶ 14} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. Id. at 556–557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

{¶ 15} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. Id. at 28, 697 N.E.2d 610. * * *

{¶ 16} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Colbert* at ¶ 7–9.

{¶ 17} For the individual employees of political subdivisions, the analysis of immunity differs. Instead of the three-tiered analysis described in *Colbert*, R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 18} Both lower courts in this case agreed that the county appellees were engaged in a proprietary function and that the exception to immunity under R.C. 2744.02(B)(2) [16] applied. Those courts, however, did not agree on whether Green and Warder are themselves immune for their allegedly negligent actions. The trial court found that the nurses' immunity was abrogated because liability was imposed on them by R.C. 3721.17(I)(1). The Third District determined that R.C.

---

16. R.C. 2744.02(B)(2) provided that political subdivisions may be "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." The determination that appellees had engaged in a proprietary function has not been challenged on appeal to this court.

3721.17(I)(1) did not expressly impose liability on political subdivision employees and that therefore the nurses are immune.

{¶ 19} Cramer also argued that the exception to political subdivision immunity under R.C. 2744.02(B)(5) applied to the county appellees because Warder's and Green's actions violated R.C. 3721.17(I)(1). The Third District characterized this exception as moot and declined to consider it because the county appellees were already subject to liability under R.C. 2744.02(B)(2) for any negligent acts. *Cramer v. Auglaize Acres,* 2005-Ohio-3609, at ¶ 36. We do not agree. Unlike sections R.C. 2744.02(B)(1) through (4), R.C. 2744.02(B)(5) is not limited to negligent actions. Therefore, we must also examine whether the exception to immunity pursuant to R.C. 2744.02(B)(5) applies.

## Liability Expressly Imposed by R.C. 3721.17(I)(1)

{¶ 20} If the General Assembly expressly imposes liability on a political subdivision in another section of the Revised Code, a political subdivision is liable for injury, death, or loss to person or property. In 2002, R.C. 2744.02(B)(5) provided, "In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued." Similarly, R.C. 2744.03(A)(6)(c) provided that an employee will not be immune if "[l]iability is expressly imposed upon the employee by a section of the Revised Code."

{¶ 21} Cramer contends that R.C. 3721.17(I)(1) expressly imposes liability on the county and its employees, without distinguishing between negligent and intentional acts. This section states: "Any resident whose rights under sections 3721.10 to 3721.17 of the Revised Code are violated has a cause of action against *any person or home* committing the violation." (Emphasis added.) Appellees argue that R.C. 3721.17(I)(1) does not satisfy the requirements of R.C. 2744.02(B)(5) or 2744.03(A)(6)(c) by expressly imposing liability on either the county appellees or their employees, Green and Warder. Appellees contend that R.C. 3721.17(I)(1) is a statute that imposes general sanctions against everyone rather than against a political subdivision or its employees.

{¶ 22} Appellees also assert that there is no clear intention to impose liability on a county home because a county home does not qualify as a "home" under the Ohio Nursing Home Patients' Bill of Rights. They rely on R.C.

3721.01(A)(1)(c)(xi), which provides that "home" does not mean "[a] county home or district home that has never been licensed as a residential care facility." [17] Although there is no dispute that Auglaize Acres is an unlicensed county home, appellees' reliance on R.C. 3721.01 is misplaced. This definitional section is limited to *sections 3721.01 to 3721.09* and 3721.99 of the Revised Code. R.C. 3721.01(A).

{¶ 23} Cramer contends instead that the broader definition of "home" found in R.C. 3721.10(A) should apply. We agree. R.C. 3721.10(A) begins by stating that

---

17. {¶ a} The definition of "home" under R.C. 3721.01 is as follows:

{¶ b} "(A) As used in sections 3721.01 to 3721.09 and 3721.99 of the Revised Code:

{¶ c} "(1)(a) 'Home' means an institution, residence, or facility that provides, for a period of more than twenty-four hours, whether for a consideration or not, accommodations to three or more unrelated individuals who are dependent upon the services of others, including a nursing home, residential care facility, home for the aging, and a veterans' home operated under Chapter 5907. of the Revised Code.

{¶ d} "(b) 'Home' also means both of the following:

{¶ e} "(i) Any facility that a person, as defined in section 3702.51 of the Revised Code, proposes for certification as a skilled nursing facility or nursing facility under Title XVIII or XIX of the 'Social Security Act,' 49 Stat. 620 (1935), 42 U.S.C.A. 301, as amended, and for which a certificate of need, other than a certificate to recategorize hospital beds as described in section 3702.522 of the Revised Code or division (R)(7)(d) of the version of section 3702.51 of the Revised Code in effect immediately prior to April 20, 1995, has been granted to the person under sections 3702.51 to 3702.62 of the Revised Code after August 5, 1989;

{¶ f} "(ii) A county home or district home that is or has been licensed as a residential care facility.

{¶ g} "(c) 'Home' does not mean any of the following:

{¶ h} "(i) Except as provided in division (A)(1)(b) of this section, a public hospital or hospital as defined in section 3701.01 or 5122.01 of the Revised Code;

{¶ i} "(ii) A residential facility for mentally ill persons as defined under section 5119.22 of the Revised Code;

{¶ j} "(iii) A residential facility as defined in section 5123.19 of the Revised Code;

{¶ k} "(iv) A community alternative home as defined in section 3724.01 of the Revised Code;

{¶ l} "(v) An adult care facility as defined in section 3722.01 of the Revised Code;

{¶ m} "(vi) An alcohol or drug addiction program as defined in section 3793.01 of the Revised Code;

{¶ n} "(vii) A facility licensed to provide methadone treatment under section 3793.11 of the Revised Code;

{¶ o} "(viii) A facility providing services under contract with the department of mental retardation and developmental disabilities under section 5123.18 of the Revised Code;

{¶ p} "(ix) A facility operated by a hospice care program licensed under section 3712.04 of the Revised Code that is used exclusively for care of hospice patients;

{¶ q} "(x) A facility, infirmary, or other entity that is operated by a religious order, provides care exclusively to members of religious orders who take vows of celibacy and live by virtue of their vows within the orders as if related, and does not participate in the medicare program established under Title XVIII of the 'Social Security Act' or the medical assistance program established under Chapter 5111. of the Revised Code and Title XIX of the 'Social Security Act,' if on January 1, 1994, the facility, infirmary, or entity was providing care exclusively to members of the religious order;

{¶ r} "(xi) A county home or district home that has never been licensed as a residential care facility."

it relates particularly to "sections 3721.10 to 3721.18 of the Revised Code." Pursuant to R.C. 3721.10(A):

{¶ 24} " 'Home' means *all of the following* :

{¶ 25} "(1) A home as *defined in section 3721.01* of the Revised Code;

{¶ 26} "(2) Any facility or part of a facility not defined as a home under section 3721.01 of the Revised Code that is certified as a skilled nursing facility under Title XVIII of the 'Social Security Act,' 79 Stat. 286 (1965), 42 U.S.C.A. 1395 and 1396, as amended, or as a nursing facility as defined in section 5111.20 of the Revised Code;

{¶ 27} "(3) *A county home or district home* operated pursuant to Chapter 5155. of the Revised Code."  (Emphasis added.)

{¶ 28} By adding to the definition of "home" found in R.C. 3721.01 (which admittedly does exempt unlicensed county homes not licensed as residential care facilities [18]) a specific reference to "county homes" operated pursuant to R.C. Chapter 5155, the General Assembly expressed its intent to give to all county nursing-home residents the rights set forth in R.C. 3721.10 through 3721.17.[19]

{¶ 29} This court has previously held that immunity is negated under R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) by the express provisions of R.C. 2151.421, which imposes liability on a political subdivision and its employees for a failure to report known or suspected child abuse.  In *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, we observed that R.C. 2151.421(A)(1)(b) listed those persons required to report abuse or neglect, and R.C. 2151.99 provided that whoever violated R.C. 2151.421 was guilty of a fourth-degree misdemeanor.  In holding that R.C. 2151.421 expressly imposed liability within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), we stated: "[I]t is clear that the concern of the General Assembly in enacting R.C. 2151.421 was not political subdivisions or their employees, but the protection of children from abuse and neglect."  Id. at 341, 750 N.E.2d 539.

{¶ 30} A similar sentiment is true in this case.  Like children, the elderly are vulnerable to abuse and neglect by others.  R.C. 3721.10 through 3721.17 was enacted to protect nursing home residents.  The General Assembly specifically included county homes operated pursuant to R.C. Chapter 5155 within its definition of the "homes" that can be sued and thus specifically imposed liability on county-operated homes for any violation of the Patients' Bill of Rights.

---

18.  R.C. 3721.01(A)(1)(c)(xi).

19.  R.C. 3721.10(A)(3) also does not distinguish between licensed and unlicensed county homes; therefore, the fact that Auglaize Acres is an unlicensed county home does not prevent it from being a "home" under the plain language of R.C. 3721.10.

{¶ 31} The county appellees also argue that the General Assembly could not have intended to make unlicensed county homes subject to the Patients' Bill of Rights because R.C. 3721.17(I)(2)(a) allows a resident to recover punitive damages for a violation,[20] and R.C. 2744.05(A) prohibits the award of punitive damages against a political subdivision.[21] A conflict over the recovery of punitive damages does not prevent the application of R.C. 3721.17(I)(1) to the county appellees. Although punitive damages may not be awarded against a political subdivision, we hold that R.C. 3721.17 expressly imposes liability on county-operated nursing homes for violations of R.C. 3721.10 through 3721.17. Thus Cramer's cause of action against the county appellees under the Patients' Bill of Rights falls under the exception to immunity found in R.C. 2744.02(B)(5).

{¶ 32} With respect to nurses Warder and Green, the court of appeals determined that the use of the term "person" in R.C. 3721.17(I)(1) was too general to expressly impose liability on an employee of a political subdivision. Unlike the term "home," the term "person" is not defined in the Patients' Bill of Rights. Under R.C. 3721.13, certain patients' rights—such as the right to adequate and appropriate medical treatment and nursing care and the right to communicate with the home's physician and employees in planning treatment or care—involve the conduct of nursing home employees, but there is no express statement that the employees of a county nursing home will be liable individually for violations of the Patients' Bill of Rights. We therefore hold that R.C. 3721.17(I)(1) does not expressly impose liability on the employees of the county nursing home within the meaning of R.C. 2744.03(A)(6)(a). Thus, Cramer has no cause of action against the nurses under the Patients' Bill of Rights.

## Defense under R.C. 2744.03(A)(5)

{¶ 33} Because the exceptions to political subdivision immunity under R.C. 2744.02(B)(2) and (5) apply with regard to the county appellees, we must consider whether any defense under R.C. 2744.03 reinstates that immunity. The court of appeals determined that there was a material issue of fact concerning whether the defense in R.C. 2744.03(A)(5) could be applied. We agree.

---

20. The current version of the statute provides for an award of punitive damages under R.C. 3721.17(I)(2)(b).

21. {¶ a} R.C. 2744.05 provides:

{¶ b} "Notwithstanding any other provision of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function:

{¶ c} "(A) Punitive or exemplary damages shall not be awarded."

{¶ 34} R.C. 2744.03(A)(5) restores a political subdivision's immunity if "the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." Cramer argues that as a matter of law, the defense in R.C. 2744.03(A)(5) is not available to the county appellees. He concedes that Green and Warder had discretion to decide whether to use the Hoyer lift to put Frank in bed. But once the nurses decided to use the lift, Cramer maintains, there was no discretion left because there is only one method for using it. Cramer also contends that after Frank fell, the nurses failed to follow Auglaize Acre's policy regarding falls.

{¶ 35} We do not agree that the decision to use the Hoyer lift is the only discretionary act involved, for the nurses' treatment decisions concerning Frank are also discretionary. Furthermore, the proper method for using the Hoyer lift and the issue of whether the nurses properly followed the home's policy concerning patient falls are also disputed. Because there are material issues of fact as to whether the nurses acted maliciously, in bad faith, wantonly, or recklessly, we cannot say as a matter of law that R.C. 2744.03(A)(5) is inapplicable in this case. Resolution of these questions will be for the factfinder to decide.

## Conclusion

{¶ 36} We hold that R.C. 3721.17(I)(1) specifically abrogates governmental immunity and grants a cause of action to residents of unlicensed county nursing homes against a political subdivision for violations of R.C. 3721.10 through 3721.17, the Ohio Nursing Home Patients' Bill of Rights. We hold further that R.C. 3721.17(I)(1) does not expressly impose liability on political subdivision employees within the meaning of R.C. 2744.03(A)(6)(a). In this case, there is a material question of fact as to whether the defense in R.C. 2744.03(A)(5) applies.

{¶ 37} For the foregoing reasons, the judgment of the court of appeals is reversed to the extent that it refused to recognize a cause of action under the Ohio Nursing Home Patients' Bill of Rights against Auglaize Acres and the Auglaize County Board of County Commissioners. The judgment is affirmed in all other respects. The case is remanded to the trial court for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOYER, C.J., MOORE, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

CARLA D. MOORE, J., of the Ninth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

Wilson Law, Gregory D. Wilson, and Eric J. Wilson, for appellant.

Ritter, Robinson, McCready & James, Ltd., Brad A. Everhardt, Timothy C. James, and Mark P. Seitzinger, for appellees.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; Dickson & Campbell, L.L.C., and Blake A. Dickson, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, and Michael V. Passella; Benesch, Friedlander, Coplan & Aronoff, L.L.P., and Martha J. Sweterlitsch, urging affirmance for amici curiae, County Commissioners Association of Ohio and Ohio County Homes Association.

Subashi, Wildermuth & Ballato, Nicholas Subashi, and Kate M. Rottmayer, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.

William F. Schenck, Greene County Prosecuting Attorney, and Amy D. Ikerd, Assistant Mercer County Prosecuting Attorney, urging affirmance for amicus curiae, Ohio Prosecuting Attorneys' Association.