[Cite as *Pierce v. Gallipolis*, 2015-Ohio-2995.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

JAMES PIERCE, ET AL.,                    :

    Plaintiffs-Appellees,            :
                                    Case No. 14CA3

    v.                               :

                                      DECISION AND
THE CITY OF GALLIPOLIS,                  :    JUDGMENT ENTRY

    Defendant-Appellant.             :    RELEASED 07/23/2015

---

APPEARANCES:

Adam R. Salisbury, Gallipolis City Solicitor, Gallipolis, Ohio, for defendant-appellant.

D. Joe Griffith, Dagger, Johnston, Miller, Ogilvie & Hampson, Lancaster, Ohio, for plaintiffs-appellees.

---

Hoover, P.J.

{¶ 1} The City of Gallipolis ("appellant") appeals the summary judgment decision of the Gallia County Common Pleas Court, which determined that appellant was not entitled to sovereign immunity under R.C. Chapter 2744 for the claims asserted by James and Carol Pierce ("appellees"). The appellees claim that a sewer line, owned and operated by appellant, cracked, released raw sewage, and caused a landslip event and damage to their home. Appellant contends that it is immune from liability pursuant to R.C. 2744.02 because (1) appellees' claims regarding the failure of the sewer line relates to the failure to reconstruct the sewer system which is a governmental function, rather than negligent maintenance of the sewer line system, which is a proprietary function; and (2) the appellees have failed to establish that appellant acted

negligently, or alternatively, that its purported negligence was the proximate cause of the appellees' damages. Finding no merit to this appeal, we affirm the judgment of the trial court[1].

I. FACTS

{¶ 2} The appellees allege that a sewer line owned and operated by the appellant, and located beneath the appellees' property, cracked and caused sewage and storm water to be released from the pipe. As a result of the leak, appellees contend that "massive erosion" occurred on their property causing a land slippage and earth movement event on April 24, 2011. The landslip event allegedly caused the appellees' residence to crack and separate; exposed the appellees to raw sewage; injured appellee James Pierce to the extent that he required hospitalization and surgery; and made their residence uninhabitable. Appellees filed a complaint for property damage, personal injury, loss of consortium, and nuisance. In their complaint, appellees alleged that appellant's negligent failure to maintain the sewer line caused it to crack, in turn causing the release of sewage, erosion, land slippage, and the above-described damages. Appellant denied the allegations of the complaint.

{¶ 3} After conducting discovery, appellant filed a motion for summary judgment contending that it was immune from liability under R.C. Chapter 2744. Specifically, appellant contended that "the conduct about which [appellees] complain was unrelated to the establishment, maintenance, or operation of a sewer system, and, rather, falls under the non-provision of a reconstruction of a sewer system, and therefore should be considered a governmental function rather than a proprietary function." Appellant further argued that (1) the appellees could not establish a causal connection between the complained of conduct and the

---

[1] Ordinarily, a decision denying a party's motion for summary judgment is not a final, appealable order. However, under R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

landslip event; (2) the appellees could not establish that the complained of conduct was negligent; and (3) it was unclear from the complaint if the appellees were complaining about the action or inaction of its employees, or of the actions or inactions of independent contractors hired by appellant to perform work subsequent to the landslip event. In support of its arguments, appellant cited to a prior case from this Court, in which we found a municipality immune from liability for an improperly designed, rather than an improperly maintained, sewer system. *See Essman v. Portsmouth*, 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837. Appellant also attached the affidavit of Randall J. Finney, the City Manager of Gallipolis.

{¶ 4} Finney, in his affidavit, stated that there were no complaints on record of land slippage, sewer odor, or other conditions that would indicate a failure of the sewer line near appellees' residence prior to the April 24, 2011 landslip event. The Finney affidavit also incorporated a report provided to the appellant following the landslip event by Gannett Fleming Engineers and Architects, P.C ("Gannett Fleming"). The report opines that a large amount of fill on top of a steep slope of appellees' property without compensating fill at the bottom of the slope, combined with unusually heavy rainfall in April 2011, caused the land to slip, which then, broke the sewer line. Finney also averred, in his affidavit, that appellant conducts routine maintenance of the sewer lines near appellees' residence, including the sewer lines at issue in the case, "by regularly inspecting the lift station fed by said lines." Finney contends that had any significant cracks or breaks in the line been present prior to the landslip event, a noticeable amount of soil would have been present at the lift station – yet no soil or other signs of breakage was ever discovered during the inspections of the lift station. Finally, Finney averred that subsequent to the landslip event, appellant hired several independent contractors to perform duties related to new construction and replacement of the sewer lines.

{¶ 5} Appellees filed a timely memorandum contra motion for summary judgment. In their memorandum contra, appellees argued that R.C. Chapter 2744 does not provide immunity for appellant's failure to maintain its sewer system. Specifically, appellees asserted that appellant never conducted maintenance or inspections on the sewer lines running beneath their property; and as a result of the lack of maintenance and repair, the lines deteriorated, separated, cracked, and collapsed. Appellees further argued that the maintenance, operation, and upkeep of a sewer line is a proprietary rather than governmental function and attempted to distinguish the facts of the instant case from the facts decided by this Court in *Essman*, supra. Furthermore, appellees argued that the damages sustained were directly and causally related to appellant's failure to maintain the sewer line, and at the very least, the issue of proximate cause was a question of fact for a trier of fact to decide.

{¶ 6} Appellees' memorandum contra was supported by three affidavits. First, Glenn Litman, the appellees' neighbor, submitted an affidavit in which he averred that in the twenty years of living near the appellees, he was "aware that there was no maintenance conducted by [appellant] on the sewer line easement at any time prior to April 24, 2011 * * *." Litman further averred that there has been several "sewer backups" in the neighborhood and that "the lack of sewer line maintenance caused the sewer line to collapse near [appellees'] property and has caused damages to many properties along Chillicothe Road."

{¶ 7} Second, appellee Carol Pierce submitted an affidavit in support of the memorandum contra. In her affidavit, appellee Carol Pierce averred that (1) she has lived at her residence for over twenty years, and since she has resided at the property no maintenance has ever been conducted on the sewer lines by any employee or representative of appellant prior to April 2011; (2) erosion from a collapsed sewer line caused the surface ground of her property to

collapse on April 24, 2011; (3) following the landslip event she contacted Finney, for several weeks Finney denied that a sewer line existed on the appellees' property, and during the time that the appellant denied the existence of the sewer line additional sewage and storm water continued to flow through the broken line causing additional damage; (4) despite notifying appellant of the broken sewer line and landslip event, appellant took no action for more than eight months before repairing the sewer line causing the foundation of appellees' house to crack; (5) that the sewer line "was scanned" in November 2011 revealing that the clay sewer line had broken apart in several places and was completely missing from an area near the home; (6) she could plainly see a cavernous washout section following the landslip; (7) she has reviewed the appellant's maintenance records, and that none of the purported sewer line maintenance was conducted in an area near her home; (8) she reviewed "documents from a [November 2011] camera investigation of the line" provided in discovery, and that the documents demonstrate that the sewer line was separated, cracked, broken, and non-existent in the area of her property; and (9) had the appellant conducted proper inspection it would have found the sewer line to be in disrepair, and had the appellant took quicker action once being notified of the landslip event, further damage could have been prevented.

{¶ 8} Finally, appellees presented the affidavit of Ben J. Stuart. Stuart is a professor of civil engineering at Ohio University with expertise in the area of hydraulics, wastewater treatment systems, and sewage systems. In his affidavit, Stuart avers that in 2013 he conducted an inspection of appellees' property, inspected the "old clay tile that served as the sewer line for [appellees'] property in and before April of 2011", and reviewed documents produced by appellant, governmental agencies, and appellee James Pierce. Stuart further averred that there

was no evidence demonstrating routine maintenance of the sewer line running under appellees'

property. Reaching a conclusion, Stuart states in his affidavit that:

It is my opinion, based upon a reasonable degree of engineering certainty, that the

lack of maintenance of this sewer line allowed the line to fall into a state of

disrepair with several cracks and breaks in the line which allowed excess water to

infiltrate the line and for storm water and sewer water racing at high speeds

underground to cause erosion to the subsoils near the line. Over time, this erosion

caused caverns to develop in and around the sewer line near the Pierce property.

This erosion caused and/or exacerbated a soil slippage/subsidence event in April

of 2011 which caused earth movement directly near the Pierce residence, causing

damages to the Pierce property. Further, after Mr. and Mrs. Pierce advised the city

of problems with the line in April of 2011, the city failed to respond in a timely

fashion, allowing further erosion and slippage to occur in the easement area,

causing further damages to the Pierce property and residence.

{¶ 9} Later in the affidavit, Stuart again clarified his opinion as follows:

It is my opinion, based upon a reasonable degree of engineering certainty, that the

City of Gallipolis breached its duty to have a maintenance plan to properly care

for the clay sewer line adjacent to Mr. and Mrs. Pierce's property. It is my

opinion, based upon a reasonable degree of engineering certainty, that the City of

Gallipolis breached its duty by failing to conduct maintenance on the sewer line

adjacent to the Pierce property for a period in excess of 20 years. It is my opinion,

based upon a reasonable degree of engineering certainty, that it is foreseeable to

any reasonable person in the field of sewer maintenance that if a clay sewer line is

not maintained for a period in excess of 20 years that the sewer line will fall into a state of disrepair with the potential to cause damages to nearby landowners. It is my opinion, based upon a reasonable degree of engineering certainty, that the lack of maintenance by the City of Gallipolis in this case directly and proximately caused the sewage subsidence event on April 24, 2011 which directly and proximately caused damages to the residence of Carol and James Pierce at 23 Chillicothe Road, Gallipolis, Ohio. It is further my opinion, that the City of Gallipolis breached its duty to conduct maintenance/repairs after it was advised by Mr. and Mrs. Pierce about the subsidence event in April of 2011. The city's failure to conduct repairs for a period of eight months thereafter caused further and more extensive damage to the Pierce property and residence.

{¶ 10} Following the filing of appellees' memorandum contra, the appellant filed a response brief. Attached to appellant's response brief was another affidavit from Finney, in which Finney averred, inter alia, that within a month of the landslip event the appellant contracted to have a new sewer line constructed near appellees' residence. Finney also stated that, following the landslip event, he responded to appellees' complaints of sewer seepage and conducted follow-up testing of ground samples and found no evidence of seepage. In addition to the briefs and summary judgment evidence, the trial court also heard oral argument on the motion for summary judgment.

{¶11} After considering the briefs and oral argument, the trial court issued a decision and entry denying appellant's motion for summary judgment. In reaching its decision, the trial court concluded that the appellees' allegations related to the negligent maintenance of the sewer lines, and that a political subdivision's failure to maintain its sewer system is a proprietary act. Thus,

the trial court determined that if proven, appellant's negligent performance of its proprietary

function of maintaining its sewer system would expose it to liability under R.C. 2744.02(B)(2).

As to appellant's complaints regarding negligence and causation, the trial court determined that

the summary judgment evidence created a genuine issue of material fact on those issues, thus

rendering summary judgment improper. It is from this decision and entry that appellant brings its

timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant asserts the following assignments of error for review:

First Assignment of Error:

> The Trial Court erred in finding that material facts exist so as to deny Appellant's motion for summary judgment as to Plaintiffs'/Appellees' alleged damages regarding the initial land subsistence event in April 2011. The trial court should have found that the conduct about which Plaintiffs complain related to a governmental, not proprietary, function and the City was immune pursuant to Ohio Revised Code Section 2744.

Second Assignment of Error:

> The Trial Court erred in finding that material facts exist so as to deny Appellant's motion for summary judgment as to Plaintiffs'/Appellees' alleged damages regarding the initial land subsistence event in April 2011. The trial court should have found that Plaintiffs cannot establish a causal connection between the conduct about which they complain and the land slip event[.]

Third Assignment of Error:

> The Trial Court erred in finding that material facts exist so as to deny Appellant's motion for summary judgment as to Plaintiffs'/Appellees' alleged damages regarding the initial land subsistence event in April 2011. The trial court should have found that Plaintiffs cannot establish that the conduct about which they complain was, in fact, negligent[.]

Fourth Assignment of Error:

> The Trial Court erred in finding that material facts exist so as to deny Appellant's motion for summary judgment as to alleged losses suffered by Plaintiffs/Appellees during the reconstruction of the neighborhood sewer line. The

trial court should have found that the City was immune pursuant to Ohio Revised Code Section 2744 as described herein.

Fifth Assignment of Error:

The Trial Court erred in finding that material facts exist so as to deny Appellant's motion for summary judgment as to alleged losses suffered by Plaintiffs/Appellees during the reconstruction of the neighborhood sewer line. The trial court should have found that it is unclear from Plaintiffs complaint if they are complaining about the action or inaction of City's employees or an independent contractor hired by the City to perform work subsequent to April 24, 2011.

## III. SUMMARY JUDGMENT STANDARD

{¶ 13} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12.  Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 14}  Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15.  In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor.  Civ.R. 56(C).  The party moving for summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the

pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs,* 4th Dist. Pickaway No. 11CA25, 2012–Ohio–3150, ¶ 17; *Wagner v. Young,* 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Dresher* at 293. However, once the initial burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Id.;* Civ.R. 56(E).

## IV. LAW AND ANALYSIS

{¶ 15} In its first assignment of error, appellant contends that the trial court erred in denying its motion for summary judgment for the claims and damages associated with the initial landslip event because it is immune from liability under R.C. 2744.02. In particular, appellant asserts that appellees' complaint alleges a failure on behalf of appellant to replace or improve the sewer line – a governmental function for which it is entitled to immunity.

{¶ 16} R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability. *See, e.g., Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007–Ohio–1946, 865 N.E.2d 9, ¶ 14. First, R.C. 2744 .02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. *See, e.g., Cramer* at ¶ 14*; Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003–Ohio–3319, 790 N.E.2d 781, ¶ 7. The statute states: "Except as provided in

division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 17} Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *See, e.g., Cramer* at ¶ 15*; Ryll v. Columbus Fireworks Display Co.,* 95 Ohio St.3d 467, 2002–Ohio–2584, 769 N.E.2d 372, ¶ 25. Applicable to the case sub judice, R.C. 2744.02(B)(2) states:

> Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised
> Code, political subdivisions are liable for injury, death, or loss to person or
> property caused by the negligent performance of acts by their employees with
> respect to proprietary functions of the political subdivisions.

{¶ 18} Finally, if liability exists under R.C. 2744.02(B), R.C. 2744.03(A) sets forth several defenses that re-instate a political subdivision's immunity. *See Cramer* at ¶ 16; *Colbert* at ¶ 9.

{¶ 19} In the case sub judice, the parties do not dispute that appellant is entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, appellant's first assignment of error focuses on whether the R.C. 2744.02(B)(2) exception to immunity applies to appellees' claims associated with the events leading to the landslip event and initial damage caused by the landslip.[2]

{¶ 20} R.C. 2744.02(B)(2) subjects a political subdivision to liability for "the negligent performance of acts by their employees with respect to proprietary functions of the political

---

[2] We further note that appellant does not set forth a R.C. 2744.03(A) defense in the event it is liable under R.C. 2744.02(B).

subdivisions." Thus, before this provision removes a political subdivision's immunity, a plaintiff must demonstrate that the political subdivision's employees negligently performed a proprietary function. Accordingly, before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action-duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a "proprietary function." *See generally*, *Gabel v. Miami E. School Bd.*, 169 Ohio App.3d 609, 2006–Ohio–5963, 864 N.E.2d 102, ¶¶ 39–40 (2nd Dist.). A "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" R.C. 2744.01(G)(2)(d).

{¶ 21} Under R.C. 2744.02(B)(2), a political subdivision cannot be held liable for the negligent performance of acts by their employees with respect to a governmental function. A "governmental function" includes "[t]he provision or nonprovision, planning or design, construction or reconstruction of * * * a sewer system." R .C. 2744.01(C)(2)(l).

{¶ 22} Here, appellant contends that the appellees' true complaints rest upon a governmental function (i.e., its failure to replace or improve the sewer line), and thus, that R.C. 2744.02(B)(2) does not apply and it is entitled to the R.C. 2744.02(A)(1) general grant of immunity. Appellees, on the other hand, contend that their damages resulted from appellant's negligent failure to maintain or upkeep the sewer system, which R.C. 2744.01(G)(2)(d) defines as a proprietary function. Thus, we must determine whether appellees' allegations associated with the initial landslip event and accompanying damages are based upon appellant's negligent performance of the maintenance, operation, or upkeep of the sewer system, or whether they are based upon appellant's planning or design, construction, or reconstruction of the sewer system.

{¶ 23} "Determining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the design, construction, or reconstruction of a sewer system is not always a simple inquiry." *Essman*, 2010-Ohio-4837, at ¶ 32. However, some guidance does exist. For example, "when remedying the sewer problem would involve little discretion, but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration, then the complaint is properly characterized as a maintenance, operation, or upkeep issue." *Id.*, citing *Martin v. Gahanna*, 10th Dist. Franklin No. 06AP-1175, 2007-Ohio-2651, ¶ 17, and *Zimmerman v. Summit Cty.*, 9th Dist. Summit No. 17610, 1997 WL 22588 (Jan.15, 1997). To the contrary, "[w]hen remedying a problem would require a city to, in essence, redesign or reconstruct the sewer system, then the complaint presents a design or construction issue." *Id.*, citing *Zimmerman* at * 9.

{¶ 24} In the case sub judice, appellant has not offered any evidence suggesting that the sewer system was improperly designed or constructed, thus necessitating the need to reconstruct the system prior to the initial landslip event. Nor have the appellees made such claims. To the contrary, appellees in their complaint and summary judgment affidavits repeatedly emphasize that their claimed injuries resulted from appellant's alleged failure to repair damage to the sewer line, to inspect it, to remove obstructions, or to remedy general deterioration. In particular, the appellees presented the affidavit of Stuart, their expert, in which Stuart opined that the "lack of maintenance of [the] sewer line", over twenty years, "allowed the line to fall into a state of disrepair with several cracks and breaks in the line which allowed excess water to infiltrate the line and for storm water and sewer water racing at high speeds underground to cause erosion to the subsoils near the line." Furthermore, appellee Carol Pierce and the appellees' neighbor,

Glenn Litman, submitted affidavits attesting to the appellant's alleged failure to maintain the sewer lines in the Chillicothe Road area of Gallipolis.

{¶ 25} Based upon the record before us, we reject appellant's contention that the damages caused by the initial landslip event stemmed from the negligent design or the City's failure to reconstruct the sewer lines as opposed to the negligent maintenance of the sewer lines. Instead, we conclude that the allegations set forth in appellees' complaint properly allege negligent maintenance, rather than negligent design. Furthermore, appellees have presented evidence that, if proven, would establish that appellant negligently maintained the sewer lines near their residence.  Accordingly, if proven, appellant's negligent performance of its proprietary function of maintaining its sewer system would expose it to liability under R.C. 2744.02(B)(2). Appellant's first assignment of error is overruled.

{¶ 26} In its second assignment of error, appellant contends that the trial court erred in denying its motion for summary judgment because appellees have failed to establish that the alleged negligent maintenance of the sewer lines proximately caused the landslip event and resulting damages. As discussed above, before R.C. 2744.02(B)(2) will remove a political subdivision's general grant of immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action-duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a "proprietary function." We have already determined that the alleged negligence arose from a proprietary function. Now, we are presented with appellant's argument that appellees cannot establish that the alleged negligent acts proximately caused the complained of damages.

{¶ 27} Appellant's argument in support of its second assignment of error centers around the Gannett Fleming report submitted with the first Finney affidavit. In the report, appellant's

expert opined that the landslip event was caused by a combination of the greater than average rainfall and the existing site conditions, i.e., the steep slope with fill at the top of slope creating driving forces and no fill at the bottom of the slope to create resisting forces. Thus, the Gannett Fleming report rejected the notion that the landslip event was caused by erosion from a leaking sewer line and in fact, opines that the sewer line was intact and not broken until after, or as a result of, the landslip event.

{¶ 28} Appellant, however, entirely dismisses the Stuart affidavit submitted by the appellees. In his affidavit, Stuart opined that appellant's lack of maintenance caused the sewer line to crack and break allowing sewage and other effluent to leak, which in turn caused soil erosion, the development of caverns underground, and the eventual landslip event. Appellant contends that because appellees or other nearby landowners never complained of a sewer leak, the Stuart affidavit should be summarily ignored.

{¶ 29} In essence, appellant engages in a weighing of the evidence and argues that its expert's opinion on causation should be believed over the appellees' expert opinion. Weighing of the evidence is not proper on summary judgment review. Rather, it is clear that a genuine issue of material fact on causation exists, necessitating review by a trier of fact. Accordingly, appellant has not established immunity from liability under R.C. 2744.02(A)(1), and the trial court did not error in denying appellant's motion for summary judgment. Appellant's second assignment of error is overruled.

{¶ 30} In its third assignment of error, appellant contends that it is immune from liability, and that the trial court erred in denying its motion for summary judgment, because appellees cannot prove that its conduct constituted a breach of the duty of care it owed appellees. More specifically, appellant contends that it did conduct routine maintenance of its sewer lines, had no

prior knowledge of issues with the sewer line, and thus, cannot be held liable for unreasonable and unforeseeable harm.

{¶ 31} The existence and conditions of a duty between two parties is determined by the nature of the relationship between them. *Wallace v. Ohio Dept. of Commerce, 96 Ohio St.3d 266, 2002–Ohio–4210, 773 N.E.2d 1018, ¶ 23*, citing *Commerce & Industry Ins. Co. v. Toledo,* 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). The duty element of negligence poses a question of law for the court to determine. *Id.* at ¶ 22. "[T]he existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Id.* at ¶ 23, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998); *Commerce,* supra, at 98; *Menifee v. Ohio Welding Prods., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). Duty has also been described as "the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " *Id.* at ¶ 24, quoting Prosser, Law of Torts (4th ed.1971), 325–326. Thus, there is no explicit formula for determining whether a duty exists and the existence of a duty is largely dependent upon the facts and circumstances present. *See Payne v. Vance,* 103 Ohio St. 59, 67, 133 N.E. 85 (1921).

{¶ 32} Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers. *See Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 255, 148 N.E. 846 (1925); *Kiep v. Hamilton*, 12th Dist. Butler No. CA96-08-158, 1997 WL 264236, * 6 (May 19, 1997) ("[I]f a city accepts the responsibility to maintain a sewer and is then negligent in its inspection and/or maintenance of the sewer, the city may be liable for damages proximately caused by its negligence."). *See also Essman*, 2010-Ohio-4837, at ¶ 31; *Malone v. Chillicothe*,

4th Dist. Ross No. 05CA2869, 2006-Ohio-3268, ¶ 21; *Williams v. Glouster*, 4th Dist. Athens No. 10CA58, 2012-Ohio-1283, ¶ 23. In *Mitchell Mfg. Co.,* the Ohio Supreme Court held:

> The weight of authority holds that the construction and institution of a sewer system is a governmental matter, and that there is no liability for mere failure to construct sewers. However, the weight of authority is equally decisive in holding that the operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city.
>
> The obligation to repair is purely ministerial. When, therefore, a municipal corporation assumes the control and management of the sewer or drain which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect.

(Citations omitted.) *Id*. at 255.

{¶ 33} The Ohio Supreme Court announced a similar rule in *Doud v. Cincinnati*, 152 Ohio St. 132, 137, 87 N.E.2d 243 (1949):

> A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property * * *. The municipality becomes liable for damages caused by its negligence in this regard in the same manner and to the same extent as a private person under the same circumstances."

{¶ 34} Given the above precedent, there is no doubt that appellant owed appellees a duty to maintain the sewer line. What the parties dispute, however, is whether maintenance had been

performed on the sewer line prior to the landslip event. Or, in other words, whether a breach of duty had occurred. Appellant maintains through the first Finney affidavit that it conducted routine maintenance on the lines by regularly checking the lift station for debris or other signs of leakage. Appellees, on the other hand, presented affidavits suggesting that the appellant had not conducted maintenance on the sewer line for over twenty years. Appellees also suggest, through the Stuart affidavit, that had yearly inspections of the sewer lines been conducted, appellant would have discovered the breaks in the line and developing erosion and could have corrected the problem. Furthermore, Stuart opined that it was foreseeable that a failure to inspect and maintain a sewer line could cause the line to fall into disrepair and cause damage to surrounding properties.

{¶ 35} Simply stated, genuine issues of material fact exist regarding appellant's compliance with its duty to maintain the sewer lines and whether a reasonably prudent person in similar circumstances would have anticipated that an injury was likely to result from its conduct. Accordingly, the trial court did not err in denying appellant's motion for summary judgment, and appellant's third assignment of error is overruled.

{¶ 36} In its fourth assignment of error, appellant contends that the trial court erred in denying its motion for summary judgment for the claims and damages associated with the post-landslip events, because it is immune from liability under R.C. 2744.02. In particular, and similar to its first assignment of error, appellant asserts that appellees' claims for damages associated with the post-landslip events relate to appellant's construction or reconstruction of an entirely new sewer line in the Chillicothe Road area near appellees' residence – a governmental function for which it is entitled to immunity.

{¶ 37} In support of its fourth assignment of error, appellant relies on the second Finney affidavit, wherein Finney averred that within one month of the April 2011 landslip event the appellant had contracted with a third party to construct new sewer lines to service homes in the Chillicothe Road area, including the appellees' residence. Appellant argues that its efforts to construct or reconstruct the sewer system in the Chillicothe Road area was "reconstruction", rather then mere maintenance, and therefore should be considered a governmental function entitling it to immunity. Appellant also argues that appellees' claims that it did "nothing for eight months to a year" is not supported by the facts, pointing to evidence suggesting that it was actively seeking funds to finance the new sewer lines and making efforts to appease appellees' complaints during that time period.

{¶ 38} In their complaint, appellees' allege that after the April 2011 landslip event, their residence was exposed to raw sewage and sewage water, making the residence uninhabitable. In appellee Carol Pierce's affidavit, Pierce averred that after the landslip event she contacted Finney to advise him that the sewer line had broken and requested that appellant fix the problem. According to the affidavit, Finney denied that a sewer line existed in the area, and "[d]uring the days and weeks that passed * * *, sewage water and storm water continued to pour through the broken line, continuing to erode the subsoil beneath [the] property which caused the erosion and slippage to worsen and caused the foundation of [the appellees'] home to become further damaged." Later in the affidavit, appellee Carol Pierce clarified that appellant "took no action for more than eight months to come and repair the sewer line. During this time, over eight months, sewer water and storm water continued to pour through the destroyed line, causing further damage to my property."

{¶ 39} Based on the evidence before us, we conclude that the post-landslip complained of damages resulted from and relate to the alleged negligent maintenance of the original sewer line. There is no evidence that the damages arose from the construction of the new sewer lines. Rather, the evidence suggests that the alleged (and disputed) inaction of appellant and un-remedied and exposed sewer line break following the landslip event caused further damage to the home. Furthermore, a temporary repair to the broken line could have remedied the alleged damages; even though appellant had determined that its best course of action in the long-term was to construct a new sewer system in the Chillicothe Road area. In other words, appellees have presented evidence that, if proven, would establish that appellant negligently maintained the sewer lines near their residence even after the initial landslip event of April 2011. Accordingly, if proven, appellant's negligent performance of its proprietary function of maintaining its sewer system would expose it to liability under R.C. 2744.02(B)(2). Appellant's fourth assignment of error is overruled.

{¶ 40} Finally, in its fifth assignment of error, appellant contends that appellees have failed to identify with any meaningful specificity the conduct which gives rise to their claims. Thus, appellant contends that it is entitled to summary judgment because "various companies as independent contractors" performed repairs and improvements to the appellees' land and the sewer lines subsequent to the landslip event of April 2011 but only the acts of the political subdivision and its employees are subject to liability under R.C. 2944.02(B).

{¶ 41} We disagree with appellant's contention that appellees have failed to identify with any meaningful specificity the conduct in which they complain. Rather, a review of the complaint and summary judgment evidence makes clear that appellees seek compensation for damages arising from appellant's alleged negligent failure to perform maintenance on the sewer

lines running under and near their property. In fact, appellees' claims relate to appellant's alleged omissions and failure to maintain the sewer system both before and after the April 2011 landslip event; not to any overt act of appellant or its independent contractors. Accordingly, appellant's fifth assignment of error is overruled.

V. CONCLUSION

{¶ 42} Based on the foregoing, appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, A.J.: Concurs in Judgment Only.


For the Court

By:_____
         Marie Hoover
         Presiding Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.